# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

LOUIS LOUIDOL,

    Petitioner,

v.

WARDEN TRACY JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:16-cv-14

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Louis Louidol ("Louidol"), who is currently housed at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response, and Louidol filed a Reply. (Docs. 10, 11.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Louidol's Petition without prejudice, **CLOSE** this case, and **DENY** Louidol *in forma pauperis* status on appeal.

## **BACKGROUND**

On April 13, 2001, the United States District Court for the Middle District of Florida sentenced Louidol to a 109-month term of imprisonment for conspiracy to possess with intent to distribute 500 grams or more of cocaine and possession with intent to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(ii), and 846. (Doc. 10, pp. 3–5; Doc. 10-1, p. 12, 14.) During this time, Florida state authorities had primary jurisdiction of Louidol for various state crimes, but Louidol was in federal custody pursuant to a writ of habeas

corpus *ad prosequendum*. (Id.) After he was sentenced in federal court, Louidol was returned to state authorities for adjudication on his state charges.

Subsequently, on May 14, 2001, a Florida state court in Pinellas County sentenced Louidol to a 10-month and 4-day term of incarceration for his state charges. (Id. at p. 4.) However, the court credited Louidol with "time served" and thereafter released him into the custody of authorities in Hillsborough County, Florida, regarding other state charges. (Id.) On October 24, 2001, Hillsborough County dismissed the charges but erroneously released Louidol to agents of the Bureau of Immigration and Customs Enforcement ("ICE"). (Id.) On March 25, 2002, ICE officials deported Louidol to Haiti, where Louidol contends he was incarcerated until April 23, 2004, at the Haiti National Penitentiary. (Doc. 3, p. 5.)

On August 26, 2014, following his return to the United States, ICE officials and agents with the Department of Homeland Security arrested Louidol for failure to report for service of his federal sentence. (Doc. 10, p. 4.) The charges were dismissed, and Louidol was turned over to the Federal Bureau of Prisons ("BOP") to begin serving his 109-month federal sentence obtained in the Middle District of Florida. (Id.) The BOP prepared a sentence computation for Louidol and credited him with 315 days' prior custody. The 315 days were calculated based on the period from when the Pinellas County court credited Louidol with "time served" until ICE official deported Louidol to Haiti (May 15, 2001, to March 25, 2002). (Id. at pp. 4–5.)

In his Petition, Louidol maintains that the BOP improperly credited his time served and should have also included the time he spent at the Haiti National Penitentiary and the 10-month,4-day term at Pinellas County. (Doc. 3, pp. 3, 5.) Respondent contends that the BOP cannot credit the 10-month, 4-day term toward Louidol's federal sentence because on May 12, 2016, the Middle District of Florida retroactively designated the federal sentence as running

consecutive to his state sentence.[1] (Doc. 10-1, p. 28.) Furthermore, Respondent states that the "BOP is not opposed to applying the Haitian credits once appropriate verifications can be made." (Doc. 10, p. 5.) However, Respondent asserts that the Court should not review the relative merits of Louidol's Petition because he has not exhausted his available administrative remedies concerning his request for credit against his federal sentence. (Id.)

## DISCUSSION

I. **Whether Louidol Exhausted his Administrative Remedies**

   A. **Legal Requirements for Exhaustion**

The Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). However, the normal pleading rules still apply, and dismissal is appropriate when an affirmative defense appears on the face of a complaint—making it clear that a prisoner cannot state a claim for relief. Id. at 214–15. Thus, when a party admits in his complaint or petition that he has not exhausted the grievance process, dismissal is warranted.

---

[1] At the time, the Court did not specify whether Louidol's federal sentence ran concurrently or consecutively with the state sentence.

3

See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to [42 U.S.C.] § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[2]

The Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate.

---

[2] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

4

Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has

not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Plaintiff's Efforts at Exhaustion

In his Petition, Louidol indicated he did not pursue any administrative remedies. (Doc. 1, p. 2.) However, in his Brief, Louidol contends that he completed at least some steps of the administrative remedies procedure and provides documentation to that effect. (Doc. 3, pp. 3–4, 8; Doc. 3-1.) Therefore, the Court will proceed to the second Turner step and make specific factual findings pertinent to the exhaustion question.

Inmates at D. Ray James must exhaust their administrative remedies by beginning a grievance process locally with the Warden through the contractor's grievance procedures. (Doc. 10-2, p. 3.) This involves an attempt at informal resolution, which, if unsuccessful, is followed by a formal complaint via a Step 1 administrative remedy form. (Id. at p. 2.) If the inmate is not satisfied with the resolution of the formal complaint, the inmate may appeal the Step 1 administrative remedy to the Warden via a Step 2 administrative remedy form. (Id. at p. 4.) If the inmate is unsatisfied with the Warden's response to the Step 2 administrative remedy on a BOP related matter (which includes sentencing), he must then appeal to the BOP's Administrator

of the Privatization Management Branch via a BOP Administrative Remedy Form, BP-230(13), also known as a BP-10 form. (Id. at pp. 4–5.) If the inmate is not satisfied with the Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. (Id. at p. 5.) If an inmate files an administrative remedy form concerning a BOP-related matter,[3] the BOP's SENTRY computer database will record it. (Id. at p. 6.)

The evidence before the Court reveals that Louidol only completed the administrative remedy process up to Step 2. (Doc. 3-1; Doc. 10-2, pp. 6, 16–17.) When Louidol attempted to appeal the Step 2 response, the BOP responded with a rejection notice informing Louidol that his appeal was invalid because he did not submit his appeal in the proper format. (Doc. 3-1, p. 1.) The BP-10 form specifically instructs inmates that they must submit four copies of any attachments they include with their appeal. (Id. at p. 2.) Louidol included an attachment, but "did not submit a complete set (4 carbonized sheets)," as required. (Id. at pp. 2–3.) In the rejection notice, the BOP informed Louidol that he "must provide a copy of [the attachment] for each page of the appeal form or we cannot accept your appeal." (Id. at p. 3.) The BOP gave Louidol an additional 15 days to correct his error and re-file, but Louidol did not do so. (Doc. 10, p. 8.)

In his Reply, Louidol seems to admit that he did not exhaust all his administrative remedies. He states that the Court "must not and should not dismiss this motion . . . base [sic] on the Petitioner not exhausting all of his administrative remedies," because "[a]ll of the document that was send in his motion . . . will show . . . that Petitioner *has started to* exhaust his administrative remedies." (Doc. 11, p. 1) (emphasis added). Thus, even under the first Turner

---

[3] Examples of BOP-related issues are classification, designation, sentence computation, and removal or disallowance of good conduct time. (Doc. 10-2, p. 14.)

step, it is clear that the Court must dismiss Louidol's petition for his admitted failure to exhaust before filing this action.

However, Louidol also attempts to argue that he did in fact file another appeal within the 15-day period by attaching what he contends is the re-submitted appeal. (Doc. 11, p. 1; Doc. 11-1, p. 1.) Thus, in an abundance of caution, the Court will proceed to the second Turner step to assess the validity of this argument. Louidol contends that the the BOP ignored his resubmitted appeal. However, Louidol's prison records indicate that the only other administrative remedy submission he made was on March 15, 2016, for an unrelated matter. (Doc. 10-2, p. 17.) Furthermore, the alleged copy of the appeal does not contain a dated "Received" stamp from the Privatization Management Branch. Moreover, even if Loudiol did file this resubmitted appeal, his re-submission still does not address the defect the BOP notified him of in his first submission. Louidol states in his re-submission that his appeal was rejected because it was on the wrong form, and he is now using the "right form" because it is "the pink form which is the BP-10." (Doc. 11-1, p. 1.) However, the original issue was that he did not provide a "complete set (4 carbonized sheets)" of his attachment to the BP-10 form. (Id. at pp. 1–2.) To make matters worse, the alleged re-submitted appeal is no longer even on the BP-10 form.

Therefore, it is apparent that Louidol failed to properly exhaust his available administrative remedies prior to filing this Petition. Consequently, the Court should **DISMISS** Louidol's Petition.

## II. Leave to Appeal *In Forma Pauperis*

The Court should also deny Louidol leave to appeal *in forma pauperis*. Though Louidol has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in

the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Louidol's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** without prejudice, Louidol's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Louidol leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and

Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Louidol and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 1st day of August, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA